823 A.2d 888 (2001)
360 N.J. Super. 547
Anthony TALALAI and David Michael Thompson, on behalf of themselves and all other similarly situated Plaintiffs,
v.
COOPER TIRE & RUBBER CO. Defendant.
Superior Court of New Jersey, Law Division, Middlesex County.
Decided April 16, 2001.
*891 Alan Kraus and Ann Patterson (Riker, Danzig, Scherer, Hyland & Perretti, LLP), Morristown; Janet Miller and John Neuman (Jones, Day, Reavis & Pogue); David Foley (Borrus, Goldin, Foley, Vignuolo, Hyman, Stahl, & Clarkin), North Brunswick, for Defendant.
John Keefe (Lynch, Martin, Kroll), North Brunswick; Alan Kanner, Washington, DC; (Alan Kanner & Associates), and B.R. Kaster (Green, Kaster, & Falvey), Ocala, FL, for Plaintiffs. *889
*890 CORODEMUS, J.S.C.
The matter before this court is the defendant's motion to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to R. 4:6-2(e). This is a putative class action suit brought on behalf of "all persons wherever situated who purchased a steel belted radial tire manufactured by Defendant, Cooper Tire & Rubber Company (whether sold under Cooper tire label or a private label) from 1985 to the present." (Plaintiff's Complaint at 1.)
Plaintiff Talalai is a citizen of New Jersey residing in Monroe Township, County of Middlesex and brings the action individually and on behalf of all persons similarly situated. Plaintiffs filed suit solely under the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 alleging that the defendant consciously incorporated a known hazard into its tire manufacturing process in disregard of consumer safety. On 16 February 2001 this court heard oral argument on defendant Cooper Tire's Motion to Dismiss the Complaint for Failure to State a Claim Upon Which Relief Can Be Granted.
The plaintiffs challenge the quality of the defendant's radial tire production process. Specifically, the plaintiffs allege that the manufacturing process employed by the defendant contributes to adhesion problems in various layers of the tires which manifest as visible gas bubbles or *892 blisters in the inner liner. Instead of discarding these defective tires, the plaintiffs contend, the defendant has continued to fraudulently market and sell these tires.
Some of these faulty tires (about 10% of total production), the plaintiffs contend, immediately manifest as liner blisters or visible gas bubbles (which result from hot trapped gas) between layers of the tires. These tires are awleda process in which the tire is punctured with an "awl" or an ice-pick in order to release the trapped gas. The visible liner blister is often, if not usually, accompanied by non-visible gas bubbles as additional delamination points. Many tires also have only non-visible gas bubbles.
The visible gas bubbles may or may not contract as the tire cools. This, however, does not rectify the delamination problem. In cases where the bubble has not contracted on its own, Cooper employees ice-pick or awl the tire creating a puncture from the outer surface to the bubble in order to release the trapped gas and remove the visible evidence of a delamination problem. The puncture remains as a dangerous passageway into the tire, although it is not visible to the human eye. This condition, the plaintiffs allege, seriously exacerbates the already extant delamination problems.
Defendant argues that Plaintiffs' complaint should be dismissed for three reasons.
A) Preemption
The defendant argues that plaintiffs' state law claims are preempted by federal law. The National Traffic and Motor Vehicle Safety Act, 49 U.S.C. §§ 30101, et seq. (original version at 15 U.S.C. § 1381 et seq.) (the "Safety Act"), delegates exclusive authority for motor vehicle and tire recalls to the National Highway and Traffic Safety Administration ("NHTSA"). Despite NHTSA's exclusive authority for tire recalls, defendant argues, plaintiffs seek to impose their own "citizens' recall" which they attempt to disguise as a "damages" complaint. Whatever the words used to characterize the relief, the defendant maintains, plaintiffs clearly seek an unprecedented court supervised recall and replacement of Cooper's tires that invades a field fully occupied by federal regulation and frustrates Congress' objectives in enacting the Safety Act.
Plaintiffs counter that they are not seeking a recall. Rather, they are seeking damages as a result of defendant's violation of New Jersey's Consumer Fraud Act. The plaintiffs further point out that where the defendant has previously asserted this argument it has been rejected. Judge Lechner wrote,
Despite the argument of Cooper, it does not appear the Putative Plaintiffs are seeking a recall. As mentioned, each of the Putative Plaintiffs are seeking approximately $600 in replacement costs for the allegedly defective tires. Counsel for the Putative Plaintiffs certified that the Putative Plaintiffs are not seeking a recall or any other type of injunctive relief. Moreover, at the 1 December 2000 hearing, counsel for the Putative Plaintiffs confirmed that the Putative Plaintiffs are simply seeking property damages. Talalai v. Cooper Tire & Rubber Co., 2001 WL 1877265, at *4 (D.N.J.), (slip op., p.12 Jan. 5, 2001).
Accordingly, defendant's entire preemption argument begins with an incorrect premise.
B) Failure to Set Forth a Legally Cognizable Injury
The defendant argues that plaintiffs' complaint fails to set forth any legally cognizable injury. The defendant avers *893 that the plaintiffs have not suffered any harm, but are seeking compensation for the risk of possible future harm. Under traditional principles of liabilityas well as the specific provisions of the New Jersey Consumer Fraud Actthey have failed to state a cause of action.
Plaintiffs counter that the plain language of section N.J.S.A. 56:8-2, with respect to violations of the CFA by affirmative misrepresentations, provides that it does not matter whether "any person has in fact been misled, deceived or damaged thereby." N.J.S.A. 56:8-2. "Proof of an affirmative misrepresentation of a fact material to the transaction is sufficient to establish a violation of the Act. The same applies to omissions. A practice can violate the CFA even though no one was misled or deceived as a result." Byrne v. Weichert Realtors, 290 N.J.Super. 126, 136, 675 A.2d 235, (App.Div.1996) (citing Cox, 138 N.J. at 17, 647 A.2d 454.) [It is the] "capacity to mislead" that is critical to all types of consumer fraud. Furthermore, actual reliance on the part of the plaintiff is not required under the Act. Id. at 136, 675 A.2d 235.
C) Failure to Plead Fraud with Particularity
The defendant argues that plaintiffs have not pled their fraud claim with the particularity required by New Jersey Court Rule 4:5-8. Because plaintiffs' complaint fails to include any information regarding the dates plaintiffs purchased their Cooper tires, the types of tires purchased, how much they paid, where they bought the tires, whether they still use them, or any other identifying information regarding them, the defendant contends, the requirements of R. 4:5-8 have not been met.
Plaintiffs argue that they have pled fraud with the requisite particularity required under the New Jersey Court Rules. The complaint, the plaintiffs point out, begins by clearly describing the parties. This is followed by a detailed description of the alleged faulty manufacturing process which leads to gas bubbles evidencing lack of adhesion, the process of awling the visible bubbles, as well as the fact that defendant does not disclose this information to consumers. These allegations specifically set forth the basis of plaintiffs' CFA claim. The information cited by defendant as lacking, e.g., the date plaintiffs' tires were purchased, the type, size, and price of plaintiffs' tires are matters of discovery and are not necessary to put defendant on notice of the specific claims against it.
A. Defendants' Motion to Dismiss Pursuant to R. 4:6-2(e)
When considering a motion to dismiss pursuant to R. 4:6-2(e), courts are required to search the complaint in depth to determine whether a cause of action can be found within its four corners. As Judge Dreier reasoned, relying on Printing Mart v. Sharp Electronics Corp., 116 N.J. 739, 746, 563 A.2d 31 (1989):
A reviewing court "searches the complaint in depth and with great liberality to ascertain whether a fundamental cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary." At this preliminary stage of the litigation the court is not concerned with the ability of plaintiffs to prove the allegation contained in the complaint.... For the purpose of analysis, plaintiffs are entitled to every reasonable inference of fact.... The examination of a complaint's allegations of fact required by the aforestated principles should be one that is at once painstaking and undertaken *894 with a generous and hospitable approach.
[citations omitted; Van Natta Mechanical Corp. v. Di Staulo, 277 N.J.Super. 175, 180, 649 A.2d 399 (App.Div.1994) quoting, DiCristofaro v. Laurel Grove Memorial Park, 43 N.J.Super. 244, 252, 128 A.2d 281 (App.Div.1957)].
"[E]very reasonable inference is therefore accorded the plaintiff and the motion granted only in rare instances, and ordinarily without prejudice." Lieberman v. Port Authority of New York and New Jersey, 132 N.J. 76, 79, 622 A.2d 1295 (1993). Courts should approach motions to dismiss for failure to state a cause of action pursuant to R. 4:6-2(e) with caution because such motions are usually brought at the earliest stage of the litigation. Printing Mart, supra at 772, 563 A.2d 31. Therefore, every reasonable inference is afforded the plaintiff and the motion is only granted in rare instances and ordinarily without prejudice. F.G. v. MacDonell, 150 N.J. 550, 556, 696 A.2d 697 (1997); Craig v. Suburban Cablevision, 140 N.J. 623, 625-626, 660 A.2d 505 (1995); Lieberman, supra. Ultimately, the analysis of the court is one of legal viability and not of the actual likelihood of success.
B. Plaintiffs' Claims Are Not Preempted by the National Traffic and Motor Vehicle Safety Act
Under the Supremacy Clause of the United States Constitution, the laws of the United States are "the supreme Law of the Land; ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. CONST. ART. VI, cl. 2. A state law is preempted and "without effect" if it conflicts with federal law. See Maryland v. Louisiana, 451 U.S. 725, 746, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981).
Preemption may be both express and implied. Express preemption exists where Congress explicitly states that the federal regulatory scheme is intended to preempt any state regulation. See Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 95, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). Even absent express preemption, however, federal regulation preempts state regulation when both the "pervasiveness of the federal regulation" and the dominant "federal interest in the field" reflect Congress' implicit intent to occupy the field. See also Schneidewind v. ANR Pipeline Co., 485 U.S. 293, 299-300, 108 S.Ct. 1145, 99 L.Ed.2d 316 (1988). Implied preemption also exists when federal and state regulation actually conflicti.e., "where it is impossible for a private party to comply with both state and federal requirements,... or where state law `stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " See Freightliner Corp. v. Myrick, 514 U.S. 280, 287, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995) (internal cites omitted). In addition, "state law is ... [impliedly] preempted if it interferes with the methods by which the federal statute was designed to reach this goal." International Paper Co. v. Ouellette, 479 U.S. 481, 494, 107 S.Ct. 805, 93 L.Ed.2d 883 (1987). See also Miranda v. Fridman, 276 N.J.Super. 20, 25-26, 647 A.2d 167 (App.Div.1994).
The defendant argues that federal law already provides a specific method for the replacement of defective automobile equipmentthe Motor Vehicle Safety Act 49 U.S.C. § 30101 which is administered by the National Highway, Transportation, and Safety Administration ("NHTSA"). See United States v. Firestone Tire & Rubber Co., 455 F.Supp. 1072, 1076 (D.D.C.1978) ("Congress intended that the Secretary of Transportation, and by delegation NHTSA, should have broad investigative *895 power so as to insure highway traffic safety.").
Under the Safety Act, the defendant contends, Congress created a comprehensive motor vehicle recall scheme with explicit, step-by-step rules governing recalls and occupying every aspect of recall regulation. For example, before any recall is even undertaken, NHTSA is to determineon a prospective basiswhether motor vehicle or replacement equipment contains "a defect related to motor vehicle safety." 49 U.S.C. § 30118(b)(1). That determinationentrusted by federal law to NHTSA and the manufacturersis what triggers a recall and a requirement that the defect be remedied, even as to consumers who might never suffer harm. 49 U.S.C. §§ 30118(b)(2), 30118(c).
Assuming NHTSA determines that a defect exists, federal law (1) requires manufacturers to provide both NHTSA and consumers with notice of defects, and to remedy those defects; (2) authorizes NHTSA to order manufacturers to notify owners and remedy defects and to investigate alleged defects; (3) establishes the standards under which recalls may be ordered and manufacturers may be exempted from having to recall; (4) instructs NHTSA to balance the benefits and costs of recalls; (5) provides procedures for consumers to file a complaint with NHTSA to require a recall; (6) comprehensively regulates recall notices and recall remedies, including their nature and timing; (7) provides for hearings on motion of NHTSA or consumers to evaluate remedies; (8) provides for enforcement in United States District Courts and venue in particular federal districts; and (9) allows for judicial review of NHTSA's decisions, including decisions rejecting complaints seeking to require a recall. See 49 U.S.C. §§ 30116-30121, 30162-30166; 49 C.F.R. §§ 577.1-577.10.
Congress placed NHTSA in charge of carrying out that scheme because "the primary responsibility for regulating the national automotive manufacturing industry must fall squarely upon the Federal Government," S.Rep. No. 1301 (1966), reprinted in 1966 U.S.C.C.A.N. 2709, 2712 ("1966 Senate Report"). Mandatory federal procedures are required to ensure "notification of purchasers and correction of all safety-related defects." Id. Congress was particularly concerned with ensuring "uniform notification of car owners as to any safety-related defects." Id. at 2716; see H.R.Rep. No. 1776 (1966), reprinted in I National Traffic and Motor Vehicle Safety Act Legislative History ("Leg. Hist.") 120 (1985).
Defendant points out that Congress recognized the need for a uniform, national approach to recalls, and stressed that notices of defects not pre-cleared by NHTSA could "cause undue public alarm" and other harmful effects. See 1966 S. Rep. at 2717. The Safety Act reflects Congress' determination that NHTSA's informed judgment is essential to determine whether a safety threat warrants a recall or whether the manufacturer should be saved "from incurring the expense of an extensive recall campaign." S.Rep. No. 559 (1969), reprinted in III Leg. Hist. at 103; see 49 U.S.C. §§ 30118(d), 30120(h). An order requiring a recall under state law is entirely inconsistent with the federal scheme and would invade an exclusively federal province. Accord Juvenile Products Mfgrs. Ass'n, Inc. v. Edmisten, 568 F.Supp. 714, 719 (E.D.N.C.1983) ("[C]ongress did not intend to provide States a carte blanche in their enforcement of federal motor vehicle equipment regulations").
To support the above contention the defendant would have the court rely on the decision in Truck Safety Equip. Inst. v. *896 Kane, 466 F.Supp. 1242 (M.D.Pa.1979). In Kane, the State of Pennsylvania attempted to establish a program requiring advance approval of certain lighting equipment used on motor vehicles. The statute further provided that, absent approval or if approval was retracted, the lighting equipment could not be sold in the state or used on any vehicle operated in the stateeven if it complied with NHTSA regulations. If the lighting equipment met NHTSA regulations, but was not approved by the state, the Pennsylvania law purported to require a recall of all such equipment. The state claimed that its legislation complemented the federal scheme, would not interfere with the federal regulations, and thus was not preempted.
In granting summary judgment, the Court found that "the field of highway safety in interstate commerce is particularly susceptible to Congressional control." Id. at 1247. The Court further found that the Safety Act was "a most detailed and pervasive regulatory scheme designed to reduce traffic accidents and deaths and injuries to persons ... by the requirement of uniform national standards." Id. at 1248. In reaching this conclusion, the Court reviewed the legislative history of the Safety Act and found repeated references to a "national" program for traffic safety and a "uniform" federal scheme to promote interstate commerce. Id. at 1250. Accordingly, the Court found that the Safety Act preempted not only the purported lighting standard, but also "any state method of enforcement" of the purportedly identical state standard (i.e., state enforced recall of the equipment). Id. at 1251
This court is not bound by the holding in Kane. This court does, however, find the case instructive. This court sees a distinction between the facts in Kane and the case at bar. The Kane case was about State standards and State regulations which the court found to be preempted by the federal Safety Act. In the instant case, plaintiffs do not attempt to impose a new or different set of standards or regulations on the defendant manufacturer. Put simply, plaintiffs seek damages for the defective tires they purchased. This court finds that the Safety Act does not preempt a claim under the New Jersey Consumer Fraud Act for the ascertainable loss of defective tires purchased by New Jersey consumers.
A line of cases stemming from the recent Bridgestone/Firestone recalls likewise rejects these preemption arguments. In Lennon v. Bridgestone/Firestone Inc., No. 00-4469, 2000 WL 1570645 (E.D.Pa. Oct. 19, 2000), the court wrote,
Defendants do not and cannot reasonably argue that the MVSA and NHSTA regulations preempt all state law claims concerning automobile defects. Safety and not uniformity was the primary objective of Congress in passing the MVSA. The preservation of common law liability furthers this objective.... Defendants also point to regulations concerning the conduct of recalls by manufacturers. Even assuming that federal law preempts any state law governing recalls, there is no showing that compensating plaintiffs for misrepresentation or breach of warranty conflicts with a NHTSA monitored voluntary recall. That relief in the civil action may... encompass more tires or be more extensive than the current voluntary recall [and therefore] does not constitute a conflict. There has been no showing that the MVSA or any NHTSA regulation expressly or impliedly preempt plaintiffs' state law claims. Id. at *4. In Dorian v. Bridgestone/Firestone Inc., No. 00-4470, 2000 WL 1570627 (E.D.Pa. Oct. 19, 2000), the court wrote, *897 Defendants do not cite to any express statement of legislative preemptive intent in this area. In support of their preemption argument they cite to the legislative history of the MVSA that expresses an intent to place responsibility for regulating the automotive industry upon the federal government. The cited history actually states that `primary' responsibility should lie with the federal government .... Defendants do not and cannot reasonably argue that the MVSA or NHTSA regulations preempt all state law claims concerning automobile defects. Safety and not uniformity was the primary objective of Congress in passing the MVSA. Id. at *4.
As the two cases above demonstrate, the Safety Act governs regulations and standards. The instant case is not about regulations and standards. It is about consumer fraud. See also Perry v. Mercedes Benz of North America, Inc., 957 F.2d 1257 (5th Cir.1992)(National Traffic and Motor Vehicle Safety Act does not preempt state claims that are based on allegation that vehicle was not constructed according to its design); Buzzard v. Roadrunner Trucking, Inc., 966 F.2d 777 (3rd Cir.1992)(National Traffic and Motor Vehicle Safety Act and Federal Motor Vehicle Safety Standard for illumination did not expressly preempt state common-law tort claims for defective design of illumination systems against manufacturer of flatbed truck trailer); Larsen v. General Motors Corp., 391 F.2d 495 (8th Cir.1968)(The National Traffic and Motor Vehicle Safety Act was intended to be supplementary of and in addition to common law of negligence and product liability).
C. Plaintiffs' Complaint Has Alleged a Cognizable Injury Under the Consumer Fraud Act
The New Jersey Consumer Fraud Act (the "Act") was enacted to protect consumers from improper selling practices by "prevent[ing] deception, fraud, falsity, whether by acts of commission or omission, in connection with the sale and advertisement of merchandise and real estate." See Fenwick v. Kay American Jeep, Inc., 12 N.J. 372, 376-77, 371 A.2d 13 (1977). The Act is remedial and is to be liberally construed in favor of protecting consumers. See Barry v. Arrow Pontiac, Inc., 100 N.J. 57, 69, 494 A.2d 804 (1985). The Act, in pertinent part, states,
The act, use or employment by any person of unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation or the knowing concealment, suppression or omission of any material fact with the intent that others rely upon such concealment, suppression or omission in connection with the sale or advertisement of any merchandise ... whether or not any person has in fact been misled, deceived or damaged thereby. [N.J.S.A. 56:8-2]
In 1971 the Legislature amended the Consumer Fraud Act to provide a private right of action for "[a]ny person who suffers an ascertainable loss of moneys or property, real or personal as a result of the use or employment" proscribed by the Act. See N.J.S.A. 56:8-19. There are three kinds of violations of the Act: 1) affirmative misrepresentations in connection with the advertisement or sale of merchandise; 2) knowing omissions of material facts in connection with the advertisement or sale of merchandise; and 3) violations of administrative regulations promulgated pursuant to N.J.S.A. 56:8-4.
In order to prevail under the Act, a plaintiff must prove both a violation of the Act as well as an "ascertainable loss... as a result of the unlawful conduct." Meshinsky v. Nichols Yacht Sales, Inc., *898 110 N.J. 464, 541 A.2d 1063 (1988); see also Miller v. American Family Publishers, 284 N.J.Super. 67, 76, 663 A.2d 643 (Ch.Div.1995). The New Jersey Supreme Court has held that "[t]he capacity to mislead is the prime ingredient of deception or an unconscionable commercial practice. Intent is not an essential element." See Fenwick, supra at 378, 371 A.2d 13. A plaintiff must also demonstrate that there is a "causal relationship between the unlawful practice and the `ascertainable loss.'" See Miller at 76, 663 A.2d 643 (citing Ramanadham v. New Jersey Mfrs. Insurance Co., 188 N.J.Super. 30, 455 A.2d 1134 (App.Div.1982)); see also Cox v. Sears Roebuck Co., 138 N.J. 2, 647 A.2d 454 (1994).
Plaintiffs have adequately pled an ascertainable loss as required by the CFA. The plain language of section N.J.S.A. 56:8-2, with respect to violations of the CFA by affirmative misrepresentations, provides that it does not matter whether "any person has in fact been misled, deceived or damaged thereby." N.J.S.A. 56:8-2. Proof of an affirmative misrepresentation of a fact material to the transaction is sufficient to establish a violation of the Act. Here, plaintiffs are seeking damages as a result of having to replace or have their faulty tires examined because defendant failed to tell them the true nature of the product they were buying. Under both the language of the statute and the case law, plaintiffs have established a legally cognizable injury.
In Cox v. Sears Roebuck Co., supra (1994) the New Jersey Supreme Court set forth what a plaintiff must prove to demonstrate a loss under the CFA. The Court found that a plaintiff only has to supply an estimate of damages, calculated in a reasonable degree of certainty and, thus, the "the victim is not required actually to spend the money for the repairs before becoming entitled to request a claim." Id. at 21, 647 A.2d 454. Here, plaintiffs have met their burden. Plaintiffs need not, in other words, prove that each plaintiff in the putative class has expended monies on the repair of their tires. Rather, plaintiffs need only demonstrate an ascertainable lossnamely, an estimate of the price to replace the tire(s). See also, Miller v. American Family Publishers, supra, ("for [plaintiffs'] money, they received something less than, and different from, what they reasonably expected in view of defendant's presentations. That is all that is required to establish `ascertainable loss'....")
Although this court recognizes that the issue of "ascertainable loss" has been squarely addressed in both Cox and Miller, this court finds further support for its holding in other States with similar consumer fraud statutes. In Hinchliffe v. American Motors Corp., 184 Conn. 607, 440 A.2d 810 (1981), the Supreme Court of Connecticut held that the term "ascertainable loss" did not require a plaintiff to prove a "specific amount of actual damages." Id. at 814. The Court further wrote,
"Whenever a consumer has received something other than what he bargained for, he has suffered a loss of money or property. That loss is ascertainable if it is measurable even though the precise amount of the loss is not known .... When the product fails to measure up [to reasonable expectations based on the representations made], the consumer has been injured; he has suffered a loss. [H]e has lost the benefits of the product which he was led to believe he had purchased." Id. at 814. Similar to the above reasoning, this court holds that one has suffered an ascertainable loss under the New Jersey Consumer Fraud Act where that loss is measurable *899 even though the precise amount is not known. See also, Mayhall v. A.H. Pond Co., Inc., 341 N.W.2d at 271 (Mich.App. 1983) (a "loss" exists when a "victim does not receive what he expected to receive.").
Plaintiffs in this case can easily estimate or ascertain the market value of the tires they purchased. Defendants continue to aver, however, that it is axiomatic that a product defect that has not manifested itself is not a claim for which a court can provide relief. The New Jersey Supreme Court's decision in Cox, however, demonstrates to this court that in order to survive a motion to dismiss a plaintiff under the Consumer Fraud Act need only supply an estimate of damages calculated with a reasonable degree of certainty. See Cox, supra at 22, 647 A.2d 454 ("to demonstrate a loss, a victim must simply supply an estimate of damages, calculated within a reasonable degree of certainty. The victim is not required actually to spend the money for the repairs before becoming entitled to press a claim.")
D. Plaintiffs Have Plead With the Requisite Particularity
The New Jersey Court Rules require that "in all allegations of misrepresentation, fraud, mistake, breach of trust, willful default or undue influence, particulars of the wrong, with dates and items if necessary, shall be stated insofar as practicable." R. 4:5-8(a).
Plaintiffs' complaint, the defendant points out, only includes a detailed description of the alleged faulty manufacturing process and the fact that the defendant does not disclose this information to consumers. This court holds that the information cited by the defendant as lackingthe date plaintiffs' tires were purchased, the type of tire, the size, and the price of the triesare matters of discovery.
This court holds that the defendant's motion to dismiss is hereby DENIED. Plaintiffs' complaint sets forth a viable claim under the Consumer Fraud Act, N.J.S.A. 56:8-1 alleging that the defendant consciously incorporated a known hazard into its tire manufacturing process in disregard of consumer safety. Under the Consumer Fraud Act, plaintiffs need not prove actual injury. Rather, plaintiffs under Cox need only supply an estimate of damages calculated with a reasonable degree of certainty. See Cox, supra at 22, 647 A.2d 454. Finally, defendant's argument that plaintiffs' complaint fails to plead fraud with the requisite particularity required by R. 4:5-8 falls short. The information cited by the defendant as lackingthe date plaintiffs' tires were purchased, the type of tire, the size, and the price of the tiresare matters of discovery.