NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1359
_____

CANDICE WATKINS, on behalf of herself, and all others similarly situated


v.

DINEEQUITY, INC.; APPLEBEE'S INTERNATIONAL, INC.,
d/b/a Applebee's Neighborhood Bar and Grill,
d/b/a International House of Pancakes, Inc., and
INTERNATIONAL HOUSE OF PANCAKES, LLC,
d/b/a IHOP

Candice Watkins,
                                    Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. Action No. 1-11-cv-07182)
District Judge: Honorable Jerome B. Simandle
_____

Argued November 7, 2013

Before: GREENAWAY, JR., VANASKIE, and ROTH, *Circuit Judges*

(Filed: November 7, 2014)


Sander D. Friedman [Argued]
Wesley Hanna
Law Office of Sander D. Friedman, LLC
125 North Route 73
West Berlin, NJ 08091
        *Counsel for Appellant*

John B. Kearney
Christopher N. Tomlin
Ballard Spahr LLP
210 Lake Drive East, Suite 200
Cherry Hill, NJ 08002

Robert N. Hochman [Argued]
Theodore R. Scarborough
Matthew D. Taksin
Sidley Austin LLP
One South Dearborn Street
Chicago, IL 60603
     *Counsel for Appellees*

_____

OPINION[*]

_____

VANASKIE, *Circuit Judge.*

Plaintiff-Appellant Candice Watkins appeals from the District Court's order denying her motion for reconsideration of an order dismissing her First Amended Complaint, without prejudice, and granting a motion to dismiss her Second Amended Complaint, with prejudice. Watkins contends that the District Court erred in holding that the omission of beverage prices from restaurant menus could not give rise to liability under New Jersey's Truth-in-Consumer Contract, Warranty and Notice Act (TCCWNA), N.J. Stat. Ann. § 56: 12-15. We reject Watkins's argument and will affirm for substantially the same reasons set forth by the District Court.

_____

[*] This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

I.

Defendant-Appellee DineEquity, Inc. is the parent company of both Defendant-Appellee Applebee's International, Inc. and Defendant-Appellee International House of Pancakes, LLC.[1]  Patrons at Defendants' restaurants choose from menus that list, but do not provide the prices of, "soda, beer, mixed drinks, wine, coffee, and . . . other beverages."  (App. 251.)  At the time this action was initiated, Defendants owned and operated 96 restaurants in the State of New Jersey.

Watkins, a New Jersey resident, "has purchased both soft drink beverages and beers that were offered on Defendants' menus without prices."  (App. 252.)  On October 31, 2011, Watkins filed this putative class action in New Jersey state court on behalf of a proposed class consisting of all customers who purchased beverages with undisclosed prices at Defendants' restaurants in the State of New Jersey.  Watkins's state court complaint alleged that omitting beverage prices from restaurant menus violates both the New Jersey Consumer Fraud Act (CFA), N.J. Stat. Ann. § 56:8-2, *et seq.*, and TCCWNA.

After Defendants removed the case to federal court, Watkins filed her First Amended Complaint, which dropped her claim under the CFA, leaving only a single count under TCCWNA.  On August 28, 2012, the District Court granted Defendants'

---

[1]  Throughout this opinion, we collectively refer to DineEquity, Inc. and its wholly owned subsidiaries, Applebee's International, Inc., and International House of Pancakes, LLC, as "Defendants."

Rule 12(b)(6) motion to dismiss the First Amended Complaint, without prejudice, finding that Watkins failed to state a viable claim for relief.

The District Court held that a restaurant menu is a writing covered by TCCWNA. But after a careful examination of TCCWNA's language and legislative history, as well as caselaw from New Jersey state courts and the United States District Court for the District of New Jersey, the District Court concluded that TCCWNA encompasses only illegal provisions in writings covered by the statute, and does not make actionable omissions, including the omission of beverage prices from a restaurant menu.

In response, Watkins filed both a motion for reconsideration and a Second Amended Complaint. Defendants again moved to dismiss. In an order and accompanying opinion filed January 31, 2013, the District Court denied the motion for reconsideration of its order dismissing the First Amended Complaint, and granted Defendants' motion to dismiss, with prejudice, the Second Amended Complaint, observing that "the Second Amended Complaint contains no new factual allegations that plausibly present a claim for liability under the TCCWNA." (App. 280.) This appeal followed.

II.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). We have appellate jurisdiction under 28 U.S.C. § 1291. "[W]e review de novo a district court's grant of a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." *Ballentine v. United States*, 486 F.3d 806, 808 (3d Cir. 2007). "To

4

survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). We review the denial of a motion for reconsideration for abuse of discretion. *See Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010) (per curiam).

A.

Watkins's primary argument on appeal is that the District Court erred in concluding that the omission of beverage prices from restaurant menus is not actionable under TCCWNA. The New Jersey legislature enacted TCCWNA in 1981 "to prevent deceptive practices in consumer contracts by prohibiting the use of illegal terms or warranties in consumer contracts." *Kent Motor Cars, Inc. v. Reynolds & Reynolds Co.*, 25 A.3d 1027, 1044 (N.J. 2011). The pertinent part of the statute reads:

> No seller . . . shall in the course of his business offer to any consumer or prospective consumer . . . or display any written . . . notice or sign . . . which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller . . . as established by State or Federal law at the time the offer is made or the consumer contract is signed or . . . notice or sign is given or displayed.

N.J. Stat. Ann. § 56: 12-15.[2] The statute further provides that "[a]ny person who violates the provisions of this act shall be liable to the aggrieved consumer for a civil penalty of

---

[2] A written offer, notice or sign encompassed by TCCWNA will be referred to as a "covered writing."

5

not less than $100.00 or for actual damages . . . together with reasonable attorney's fees and court costs." *Id.* § 56:12-17.

TCCWNA does not establish consumer rights or seller responsibilities. Rather, the statute bolsters rights and responsibilities established by other laws. TCCWNA creates liability whenever a seller presents a consumer with a covered writing that "contains terms contrary to any established state of federal right of the consumer." *Shelton v. Restaurant.com*, 70 A.3d 544, 558 (N.J. 2013). The rights and responsibilities to be enforced by TCCWNA are drawn from other legislation. One such piece of legislation is the CFA. *See Bosland v. Warnock Dodge, Inc.*, 933 A.2d 942, 949 (N.J. Super. Ct. App. Div. 2007), *aff'd,* 964 A.2d 741 (N.J. 2009) (A covered writing containing a provision that "violates a clearly established legal right under the CFA regulations is also a violation of the TCCWNA."). Watkins asserts that the omission of beverage prices from Defendants' menus violates the CFA, and that the menus thus violate TCCWNA. We disagree.

To state a claim under TCCWNA, a plaintiff must allege each of four elements: (1) the plaintiff is a consumer; (2) the defendant is a seller; (3) the "seller offers a consumer a contract" or gives or displays any written notice, or sign; and (4) the contract, notice or sign includes a provision that "violate[s] any legal right of a consumer" or responsibility of a seller. *Bosland*, 933 A.2d at 949. Watkins satisfies the first three elements. Watkins is a consumer, Defendants are sellers, and a restaurant menu constitutes a written offer, notice or sign for TCCWNA purposes.

This appeal focuses on the fourth element, which requires Watkins to show that Defendants' menus "include[] [a] provision that violates [a] clearly established legal right of a consumer or responsibility of a seller . . . ." N.J. Stat. Ann. § 56: 12-15. According to Watkins, Defendants have a legal obligation under the CFA, *id.* § 56:8-2.5, to post beverage prices on their restaurant menus. This provision of the CFA states:

> It shall be unlawful for any person to sell, attempt to sell, or offer for sale any merchandise at retail unless the total selling price of such merchandise is plainly marked by stamp, tag, label or sign either affixed to the merchandise or located at the point where the merchandise is offered for sale.

*Id.* Watkins asserts that Defendants' alleged violation of this legal obligation can serve as the predicate for a claim under TCCWNA, despite the fact that the purported violation stems from an omission, rather than an inclusion of information.

We are not aware of any case from the New Jersey Supreme Court touching on the issue of whether the omission of beverage prices from a restaurant menu falls within TCCWNA's prohibition against the inclusion of any provision in a covered writing that violates a legal right of a consumer or responsibility of a seller. Because this claim appears to be a matter of first impression under controlling New Jersey law, we, as a federal court sitting in diversity, must predict how the New Jersey Supreme Court would resolve the issue. *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1373 n.15 (3d Cir. 1996). As always in deciding questions of statutory interpretation, we begin with the text of the statute itself.

New Jersey courts "ascribe to the statutory words their ordinary meaning and significance, and read them in context with related provisions so as to give sense to the legislation as a whole." *DiProspero v. Penn*, 874 A.2d 1039, 1048 (N.J. 2005) (citations omitted). A plain reading of the phrase, "which includes any provision," indicates that the New Jersey legislature intended TCCWNA to cover only the inclusion of illegal provisions, and not omissions.

In support of her argument that TCCWNA covers omissions, Watkins relies heavily on two opinions from the intermediate appellate court in New Jersey: *Bosland, supra*,[3] and *Dugan v. TGI Friday's, Inc.*, No. A-3098-10T2, 2011 WL 5041391 (N.J. Super. Ct. App. Div. Oct. 25, 2011). We agree with the District Court that both cases are distinguishable.

In *Bosland*, the defendant car dealer presented the plaintiff car buyer with a written invoice containing a $117 "registration fee." 933 A.2d at 943. After purchasing the vehicle, the plaintiff discovered that the fee on the written invoice was $20 greater than the registration fee actually charged by the New Jersey Motor Vehicle Commission. As a result of the $20 overcharge, the plaintiff filed a complaint alleging that the defendant car dealership had violated the CFA as well as TCCWNA. The *Bosland* plaintiff's complaint was based on regulations promulgated pursuant to the CFA,

---

[3] The Supreme Court of New Jersey affirmed the Appellate Division's decision in *Bosland*, but its opinion is limited to the question of whether the plaintiff was required to seek a refund before bringing a CFA claim. *See* 964 A.2d at 743. The New Jersey Supreme Court did not address the scope of liability under TCCWNA.

8

N.J.A.C. §§ 13:45A-26B.1, 26B.2(a)(2)(a)(2)(i), which require car dealers to itemize and disclose any documentary service fees they charge consumers on top of the official Motor Vehicle Commission registration fee. She alleged that by including in her invoice a $117 "registration fee," the defendant charged her $20 more than the fees it was required to submit to the Motor Vehicle Commission without itemizing the overcharge, as required by N.J.A.C. § 13:45A-26B.2(a)(2)(i). In other words, the plaintiff in *Bosland* alleged that the defendant car dealer violated the CFA by including in her invoice a provision that misled her into believing that she was required to pay the New Jersey Motor Vehicle Commission $20 more than she actually was, in direct violation of regulations promulgated under the CFA.

The *Bosland* plaintiff alleged facts sufficient to support a claim that her invoice included provisions which violated the CFA, and the New Jersey intermediate appellate court found that the plaintiff has also alleged a violation of TCCWNA. 933 A.2d at 949. Unlike this case, the plaintiff in *Bosland* had alleged a viable claim under the CFA and her grievance concerned the inclusion of an illegal provision, not an omission. We therefore agree with the District Court that *Bosland* "does not shed light on whether a pure omission, without an allegation of overcharging the consumer, may constitute a stand-alone violation of the TCCWNA." (App. 275.)

*Dugan*, the other case relied upon by Watkins, is also distinguishable. There, a TGI Friday's patron was charged $2.00 for a Coors Light at the bar and $3.59 for the same drink after moving to a table within the same restaurant. *Dugan*, 2011 WL

9

5041391, at *1. The patron brought a complaint, contending that "the undisclosed price differential for the same product based upon where in the restaurant . . . the item is served" violated both the CFA and TCCWNA. *Id.* The trial court denied TGI Friday's motion to dismiss and the Appellate Division of the New Jersey Superior Court affirmed.

Watkins asserts that the unconscionable business practice giving rise to CFA and TCCWNA liability in *Dugan* was TGI Friday's violation of the legal obligation to disclose beverage prices on menus. She argues that the same practice gives rise to TCCWNA liability here. But the unconscionable practice that gave rise to liability in *Dugan* was the "secret switch" in beverage prices between the bar and table, not the omission of beverage prices from the table menu. 2011 WL 5041391, at *7. *Dugan* concerned the omission of beverage prices on the menu to make "stealth price adjustments," which were designed to "intentionally mislead[] consumers." *Id.* at *6. There is no allegation of similar duplicity in the matter before us.

In sum, Watkins has not cited any authority indicating that TCCWNA is triggered by the mere omission of beverage prices from a restaurant menu. The cases she relies upon for TCCWNA liability involve affirmative offers or pricing, included in covered writings, that are rendered inaccurate or fraudulent by the circumstances of their presentation. We therefore reject Watkins's argument that her TCCWNA claim is premised upon an unconscionable business practice that is legally indistinguishable from the business practices giving rise to liability in *Bosland* and *Dugan*.

B.

We also conclude that the District Court did not abuse its discretion in denying

Watkins's motion for reconsideration. Under Federal Rule of Civil Procedure 59(e) and

New Jersey Local Rule of Civil Procedure 7.1, a district court may grant a motion for

reconsideration if: (1) an intervening change in controlling law has occurred; (2) new

evidence has become available; or (3) reconsideration is necessary to correct a clear error

of law or prevent manifest injustice. *N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52

F.3d 1194, 1218 (3d Cir. 1995). Watkins's motion was based solely on a paragraph in

*Dugan* that the District Court had thoroughly considered in its opinion dismissing the

First Amended Complaint. The District Court therefore acted within its discretion in

refusing to reconsider its dismissal order.

III.

Accordingly, for substantially the reasons set forth in the District Court's thorough

and well-reasoned opinions dismissing both the First and Second Amended Complaints,

we will affirm the District Court's order filed January 31, 2013.

GREENAWAY, JR., Circuit Judge, dissenting

In this case, we are required to interpret two New Jersey statutes: the Truth-in-Consumer Contract, Warranty, and Notice Act (N.J. Stat. Ann. §§ 56:12-14 to 12-18) ("TCCWNA")[1] and the Consumer Fraud Act (N.J. Stat. Ann. §§ 56:8-1 to 8-20) ("CFA").[2] Both of these statutes evidence New Jersey's long tradition of strong consumer protection laws. Unfortunately, the Supreme Court of New Jersey fails to give us clear guidance on how it would rule when faced with a TCCWNA claim based on an omission of information that violates the CFA. As a consequence, my colleagues in the Majority have chosen to predict how the Supreme Court might rule. In my view, the Majority erroneously conflates the pleading requirements of the two statutes, effectively

---

[1] In relevant part, TCCWNA provides that

> No seller, lessor, creditor, lender or bailee shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign after the effective date of this act which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed. Consumer means any individual who buys, leases, borrows, or bails any money, property or service which is primarily for personal, family or household purposes.

N.J. STAT. ANN. § 56:12-15.

[2] The applicable section of the CFA prohibits merchants from selling "any merchandise at retail unless the total selling price of such merchandise is plainly marked by a stamp, tag, label or sign either affixed to the merchandise or located at the point where the merchandise is offered for sale." N.J. Stat. Ann. § 56:8-2.5.

1

undermining TCCWNA's impact. In the first instance, I believe we should certify certain questions to the Supreme Court; however, in the absence of seeking such guidance, I believe that the Supreme Court of New Jersey would interpret the clear language of TCWWNA to allow recovery in situations, like the one presented here, where the violation of the underlying statute allows for an omission of information. As such, I find I must dissent.[3]

Watkins argues that DineEquity has violated both TCWWNA and the CFA. First, DineEquity violated the CFA by failing to publish prices for beverages on the menus in its restaurants. Second, DineEquity violated TCCWNA based on the violation of the CFA. That is, the covered writing[4] (the menu) includes a provision (offering beverages for sale without prices) that is a violation of a clearly established legal right of a consumer or a clearly established legal responsibility of a seller created by the CFA. Instead of viewing the omission of beverages prices as a violation of the CFA, as alleged by Watkins, the District Court and the Majority conclude that an omission is not covered by TCCWNA. I find the Majority's result — that a menu which includes a violation of the CFA cannot form the basis for a violation of TCWWNA — to defy the clear meaning of the statute, the intent of the New Jersey legislature in enacting New Jersey's consumer

---

[3] Since I conclude the District Court erred in its decision to dismiss the complaint, I also find that it abused its discretion in denying the motion for reconsideration.

[4] For consistency, I am adopting the majority's use of "covered writing" to summarize the language of the statute addressing any "written consumer warranty, notice or sign."

2

protection laws, and existing New Jersey case law interpreting and applying these statutes.

Recently, the Supreme Court of New Jersey "review[ed] the relevant canons of statutory construction," noting that "[t]he objective of that task 'is to discern and effectuate the intent of the Legislature.'" *Shelton v. Restaurant.com*, 70 A.3d 544, 550 (N.J. 2013) (quoting *Murray v. Plainfield Rescue Squad*, 46 A.3d 1262, 1269 (N.J. 2012)). That court stated

> Our starting point is the plain language of the statute to which we accord the ordinary meaning of the words used by the Legislature. If the Legislature's intent is clear from the statutory language and its context with related provisions, we apply the law as written. We are also guided by the legislative objectives sought to be achieved by the statute. We turn to extrinsic tools to discern legislative intent, however, only when the statute is ambiguous, the plain language leads to a result inconsistent with any legitimate public policy objective, or it is at odds with a general statutory scheme.

*Id.* (internal citations omitted).

Applying those principles here, I agree with the District Court and the Majority that a menu is a covered writing pursuant to TCWWNA. I also agree with the Majority that "TCCWNA does not establish consumer rights or seller responsibilities. Rather, the statute bolsters rights and responsibilities established by other laws." (Majority at 6.)[5]

I part company with my colleagues on the question of whether an omission of

---

[5] The Supreme Court of New Jersey has described TCCWNA in a similar manner. *Shelton*, 70 A.3d at 549 ("The rights, remedies, and prohibitions conferred by the TCCWNA are 'in addition to and cumulative of any other right, remedy or prohibition accorded by common law, Federal law or statutes of this State.'" (quoting N.J. Stat. Ann. § 56:12–18)).

3

information which violates the CFA can form the basis of TCCWNA liability. (Majority at 7 (questioning whether "Defendants' alleged violation of [the CFA] can serve as the predicate for a claim under TCCWNA, despite the fact that the purported violation stems from an omission, rather than an inclusion of information)). TCCWNA plainly creates liability for a defendant who offers a covered writing to a consumer "which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller." N.J. Stat. Ann. § 56:12-15. Nowhere does TCWWNA limit that language with the caveat that the underlying statutory violation cannot be an omission of information. Here, the CFA requires the listing of prices for items offered for sale. That is, if a price is omitted from an offer to sell an item, the seller violates the CFA.

The state courts in New Jersey have long recognized that an omission of information can form the basis of a claim under the CFA. *See, e.g., Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994) ("Unlawful practices fall into three general categories: affirmative acts, knowing omissions, and regulation violations."); *Talalai v. Cooper Tire & Rubber Co.*, 823 A.2d 888, 893 (N.J. Super. Ct. App. Div. 2001) ("'Proof of an affirmative misrepresentation of a fact material to the transaction is sufficient to establish a violation of the Act. The same applies to omissions. A practice can violate the CFA even though no one was misled or deceived as a result.'" (quoting *Byrne v. Weichert Realtors*, 675 A.2d 235, 240 (N.J. Super. Ct. App. Div. 1996)).

Nothing in the language of the CFA or in the cases interpreting it limit its scope to only included language. The omission of prices from DineEquity's menus violates the CFA. Rather than presenting a TCCWNA claim based on an omission as stated by the

4

Majority, Watkins's claim rests on an omission that violates the CFA. The menus, therefore, include a violation of a clearly established state law (the CFA) and thus may also violate TCWWNA. I believe the Supreme Court of New Jersey would reach the same conclusion.

In analyzing state law, we turn first to decisions from the state's highest court. *Wayne Moving & Storage of New Jersey, Inc. v. School District of Philadelphia*, 625 F.3d 148, 154 (3d Cir. 2010). The Supreme Court of New Jersey has not spoken on the exact issue before us — whether a failure to print prices on a menu violates the CFA, thus establishing a violation of TCWWNA. However, that Court has made clear that a violation of the CFA can form the basis for a violation of TCWWNA. *Manahawkin Convalescent v. O'Neill*, 85 A.3d 947, 963 (N.J. 2014) (finding no violation of TCCWNA absent a violation of the CFA or any other law); *Bosland v. Warnock Dodge, Inc.*, 933 A.2d 942 (N.J. 2009).

Lacking guidance from the Supreme Court of New Jersey,[6] I turn to a decision from the Appellate Division of the New Jersey Superior Court: *Dugan v. TGI Friday's,*

---

[6] When faced with no decision from the state's highest court, this Court must turn to other sources, such as "relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." *McKenna v. Ortho Pharm. Corp.*, 622 F.2d 657, 663 (3d Cir. 1980). *See also Wayne Moving*, 625 F.3d at 154 ("We begin our analysis with intermediate state court judgments and grant them 'significant weight in the absence of an indication that the highest state court would rule otherwise.'" (quoting *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1373 n.15 (3d Cir. 1996)).

5

*Inc.*, 2011 WL 5041391 (N.J. Super. Ct. App. Div. Oct. 25, 2011). Albeit not binding

precedent, I nonetheless find the reasoning in *Dugan* instructive.[7] As we have observed,

> "Where an intermediate appellate state court rests its considered
> judgment upon the rule of law which it announces, that is a datum
> for ascertaining state law which is not to be disregarded by a federal
> court unless it is convinced by other persuasive data that the highest
> court of the state would decide otherwise." . . . Additionally,
> "[w]hen a state's highest court denies review, the policy reasons for
> following an intermediate court decision (absent compelling
> evidence to the contrary) are strengthened."

*Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 254 (3d Cir. 2010) (quoting *Budget Rent–*

*A–Car Sys., Inc. v. Chappell*, 407 F.3d 166, 174 & n.7 (3d Cir. 2005)).

The plaintiff in *Dugan* made two claims – one under the CFA and the other under

TCCWNA. The facts are simple: plaintiff had a beer at the bar at a TGI Friday's. The

beer at the bar cost $2.00. Plaintiff then went to a table, where she ordered the same kind

of beer. However, the menu at the table did not list any prices for beer, mixed drinks or

soft drinks. Upon receiving the bill, plaintiff learned the beer at the table cost $3.59.

Relevant to the issues presented in the present case, the Appellate Division concluded (1)

the CFA (N.J. Stat. Ann. § 56:8-2.5) required disclosure of the beer prices on the menu,

(2) plaintiff was able to demonstrate an ascertainable loss (one of the elements of

---

[7] Pursuant to N.J. Ct. R. 1:36-3, "[n]o unpublished opinion shall constitute precedent or be binding upon any court."

6

establishing a private cause of action under the CFA) [8] and, most importantly, (3) "the affirmative act that may trigger the TCCWNA is the offer encompassed by TGIF's menu."[9]  *Dugan*, 2011 WL 5041391 at *8.

The District Court and the Majority distinguish *Dugan* from the present case by ignoring the part of the decision discussing TCCWNA and focusing instead on the part of the decision that established a private cause of action under the CFA; namely, the "secret switch" of the beer prices.  (Majority at 9-10.)  I agree with my colleagues that Watkins would not be able to establish a private cause of action under the CFA since she has failed to plead any facts that demonstrate an ascertainable loss.  However, that is not the question before us.

Instead of parsing Watkins's complaint in an effort to identify a private cause of action under the CFA — a claim she has dropped — we are asked to determine whether her complaint states a claim under TCWWNA.  The District Court and the Majority never address the reasoning in *Dugan* that applies to a claim made under TCWWNA: "the affirmative act that may trigger the TCCWNA is the offer encompassed by TGIF's menu." *Dugan*, 2011 WL 5041391 at*8.  Here, as in *Dugan*, the menu includes an offer

---

[8] In order to state a claim under the CFA, a plaintiff must plead the "three elements required for the prima facie proofs: 1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss." *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 749 (N.J. 2009).  "The CFA does not demand that a plaintiff necessarily point to an actually suffered loss or to an incurred loss, but only to one that is 'ascertainable.'" *Id.* at 750.

[9] I interpret "offer encompassed by TGIF's menu" to mean the offer to sell beer and other beverages.

7

to sell beverages.  That offer to sell beverages fails to provide pricing information as required by the CFA.  Applying the Appellate Division's reasoning here, by alleging DineEquity's menus include a violation of  the CFA by failing to print beverage prices, Watkins has pled sufficient facts to demonstrate an affirmative act that triggers liability pursuant to TCWWNA.

The significant difference between the case before us and *Dugan* is the failure to plead a private cause of action under the CFA. Watkins has withdrawn her claim under the CFA.  However, violations of the CFA can occur absent a plaintiff being able to show an ascertainable loss in a private cause of action.

For example, if a plaintiff fails to establish an ascertainable loss, he or she can nonetheless demonstrate a violation of the CFA and, by doing so, recover attorney's fees and costs.  *Weinberg v. Sprint Corp.*, 801 A.2d 281, 283 (N.J. 2002) ("We conclude that to have standing under the Act a private party must plead a claim of ascertainable loss that is capable of surviving a motion for summary judgment.  In such a case, even if the factfinder ultimately determines that the loss has not been proven, a private plaintiff may obtain injunctive relief under the Act, along with attorneys' fees when unconscionable conduct is found to exist.");  *Romano v. Galaxy Toyota*, 945 A.2d 49, 58 (N.J. Super. Ct. App. Div. 2007) ("Even though plaintiff unsuccessfully proved the existence of an ascertainable loss, and was unable to recover treble damages, plaintiff can recover reasonable attorney's fees and costs because defendant committed an unlawful practice.");  *Cox*, 647 A.2d at 465 ("For the sake of completeness we add that a consumer-fraud plaintiff can recover reasonable attorneys' fees, filing fees, and costs if that plaintiff

8

can prove that the defendant committed an unlawful practice, even if the victim cannot show any ascertainable loss and thus cannot recover treble damages."). Clearly, the courts in New Jersey recognize that violations of the CFA may occur, even absent an ultimate finding of an ascertainable loss.

TCCWNA requires that a covered writing include a provision that violates a clearly established legal right of a consumer. Nowhere does TCCWNA add the requirement that the underlying violation be enforceable in a private cause of action. Here, Watkins has pled a violation of the CFA that, although she could not bring herself, could be enforced by the Attorney General. I find the requirement imposed by my colleagues that Watkins plead an ascertainable loss pursuant to the CFA prior to being able to plead a violation of TCCWNA to be contrary to the clear language of the statute, as well as the case law of the state of New Jersey.

New Jersey's long history of consumer protection leads me to doubt that the Supreme Court of New Jersey would eviscerate that history by disallowing a claim to proceed under TCCWNA, a purely remedial statute, when the statute creating the substantive violation upon which the TCCWNA claim is based, allows for an omission of information. Here, the menu violates the CFA by failing to provide beverage prices. That violation forms the basis of the TCCWNA claim. That is, the menu includes a violation of the CFA, thus violating TCCWNA.

In sum, I conclude that, rather than omitting a violation of a clearly established legal right as found by my colleagues, the covered writing at issue here includes a violation of the CFA. For decades, the courts of New Jersey have recognized that

9

violations of the CFA may be based on omissions of information. I can identify no sound basis for ignoring this case law. Therefore, I find Watkins has satisfied the pleading requirements of TCCWNA by pleading an underlying violation of the CFA. I would reverse the District Court's decision dismissing her complaint for failure to state a claim and allow her case to proceed.