933 A.2d 942 (2007)
396 N.J. Super. 267
Rhonda BOSLAND, on behalf of herself and all others similarly situated, Plaintiff-Appellant
v.
WARNOCK DODGE, INC., d/b/a Warnock Dodge/Chrysler/Jeep, Defendants/Respondents.
Superior Court of New Jersey, Appellate Division.
Argued September 17, 2007.
Decided October 18, 2007.
*943 Andrew R. Wolf, argued the cause for appellant (Galex Wolf and Glen H. Chulsky, Dover, attorneys; Mr. Wolf, Christopher J. McGinn and Mr. Chulsky, on the brief).
Ronald J. Campione, Florham Park, argued the cause for respondent (Bressler, Amery & Ross, attorneys; Mr. Campione and Eric L. Chase, on the brief).
Before Judges WEISSBARD, S.L. REISNER and BAXTER.
The opinion of the court was delivered by
BAXTER, J.A.D.
Plaintiff Rhonda Bosland purchased a vehicle from defendant Warnock Dodge on March 13, 2003. Defendant charged her $117 for a "registration fee," but plaintiff later learned that the actual official registration fee charged by the New Jersey Motor Vehicle Commission (MVC) was only $97. After plaintiff realized that she had been overcharged $20, she filed a class action complaint charging violations of the New Jersey Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -20, (count one) and the Truth-in-Consumer Contract, Warranty and Notice Act (TCCWNA), N.J.S.A. 56:12-14 to -18, (count two), and unjust enrichment (count three). Defendant moved to dismiss the amended complaint[1] with prejudice for failure to state a claim. The trial court granted that motion on September 25, 2006. On appeal, plaintiff argues that the dismissal of her complaint was error. We agree with her contentions concerning the first two counts, disagree with her arguments concerning *944 count three, and reverse the dismissal of the first two counts.

I.
When plaintiff purchased a 2003 Jeep Grand Cherokee from defendant on March 13, 2003, the dealership presented her with a Retail Buyer's Order that itemized the fees and costs. The Buyer's Order listed a registration fee of $117, but failed to specify that the registration fee included fees or charges for anything other than the official cost of the registration itself. The applicable MVC fee at the time consisted of a $77 official registration fee and a $20 fee for issuing a motor vehicle title without a lien, for a total of $97.
As a result of the $20 overcharge, three years later on March 22, 2006, plaintiff filed her complaint. In his written opinion granting defendant's motion to dismiss, the judge observed that all three counts of plaintiff's complaint were premised upon a violation of the Automotive Sales Practices Regulations (regulations). Those regulations permit automotive dealers to charge a "documentary service fee" for preparing, processing and filing documents necessary to register the motor vehicle for the customer. N.J.A.C. 13:45A-26B.1. The regulations, however, require the dealer to "itemiz[e] the actual documentary service which is being performed and set[] forth in writing on the sale document the price for each specific documentary service." N.J.A.C. 13:45A-26B.2(a)(2)(i).
In dismissing plaintiff's CFA claim, the judge held that "plaintiff fails to allege facts that defendant took this money for the performance of its duties relating to documentary services." The judge provided a second reason for dismissing the CFA claim when he stated that "plaintiff never complained about these overages, so it seems counter-intuitive to consider these fees unconscionable and an ascertainable loss. . . . [T]hese fees were defendant's profit or fees for processing or handling these papers which plaintiff, as a consumer, paid without objection."
Regarding the TCCWNA claim, the judge held that "there are insufficient factual allegations to establish" that "the contract was unclear and not easy to read." Finally, the judge dismissed the unjust enrichment claim in count three, holding that "plaintiff did not confer any benefit upon defendant that was separate and distinct from the written contract."

II.
We pause briefly to emphasize the liberality with which a trial court is required to analyze a plaintiff's complaint before dismissing it for failure to state a claim upon which relief can be granted. R. 4:6-2(e). We "review such a motion by the same standard applied by the trial court." Sickles v. Cabot Corp., 379 N.J.Super. 100, 106, 877 A.2d 267 (App.Div.), certif. denied, 185 N.J. 297, 884 A.2d 1267 (2005). Thus, our "inquiry is limited to examining the legal sufficiency of the facts alleged on the face of the complaint." Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746, 563 A.2d 31 (1989). Because such motions are brought at a very early stage in the litigation, every reasonable inference is accorded the plaintiff and "a trial court should grant a dismissal `in only the rarest of instances.'" NCP Litig. Trust v. KPMG LLP, 187 N.J. 353, 365, 901 A.2d 871 (2006) (quoting Printing Mart, supra, 116 N.J. at 772, 563 A.2d 31).
Further, when reviewing a Rule 4:6-2(e) dismissal, we "search[] the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim. . . ." Printing Mart, supra, 116 N.J. at 746, 563 A.2d 31 (quoting *945 Di Cristofaro v. Laurel Grove Mem'l Park, 43 N.J.Super. 244, 252, 128 A.2d 281 (App.Div.1957)). Consequently, "[t]he examination of a complaint's allegations of fact . . . should be one that is at once painstaking and undertaken with a generous and hospitable approach." Ibid.
We begin our analysis with the trial court's dismissal of the CFA count. The Legislature enacted the CFA in 1960 "to address rampant consumer complaints about fraudulent practices in the marketplace and to deter such conduct by merchants." Thiedemann v. Mercedes-Benz U.S.A., LLC, 183 N.J. 234, 245, 872 A.2d 783 (2005).
Because the CFA is remedial legislation, its provisions "should be construed liberally in favor of consumers." Cox v. Sears Roebuck & Co., 138 N.J. 2, 15, 647 A.2d 454 (1994). The CFA is "one of the strongest consumer protection statutes in the nation." Ibid. "The history of the [CFA] is one of constant expansion of consumer protection." Gennari v. Weichert Co. Realtors, 148 N.J. 582, 604, 691 A.2d 350 (1997). As we have observed, we "deem it our responsibility to construe the [CFA] broadly, not in a crabbed fashion." New Mea Constr. Corp. v. Harper, 203 N.J.Super. 486, 502, 497 A.2d 534 (App. Div.1985).
The Court has emphasized the importance of broad construction of the CFA in light of the myriad of unforeseeable practices merchants may devise:
Given that "[t]he fertility of [human] invention in devising new schemes of fraud is so great . . .," the CFA could not possibly enumerate all, or even most, of the areas and practices that it covers without severely retarding its broad remedial power to root out fraud in its myriad, nefarious manifestations.
[Lemelledo v. Beneficial Mgmt. Corp. of Am., 150 N.J. 255, 265, 696 A.2d 546 (1997) (citation omitted).]
As the Court explained in Cox, supra, 138 N.J. at 17, 647 A.2d 454, the CFA sets forth three general categories of unlawful acts: (1) affirmative acts; (2) knowing omissions; and (3) regulatory violations. Here, plaintiff's claim under the CFA is based on the third category, a regulatory violation, for which intent is not a required element. Id. at 18, 647 A.2d 454. The CFA "impose[s] strict liability for such violations." Ibid. This is because "parties subject to the regulations are assumed to be familiar with them, so that any violation of the regulations, regardless of intent or moral culpability, constitutes a violation of the Act." Id. at 18-19, 647 A.2d 454.
The Legislature authorized the Attorney General, acting through the Division of Consumer Affairs (Division), to promulgate regulations, having the force of law, "to deal with practices susceptible to consumer-fraud violations." Id. at 16, 647 A.2d 454. In response, the Division enacted extensive regulations, N.J.A.C. 13:45A-1.1 to 29.1, of which the Automotive Sales Practices regulations, N.J.A.C. 13:45A-26B.1 to -26B.2, are a part. The regulations protect consumers by providing them with the information necessary to avoid paying for optional hidden service fees that they would have rejected had they known what these service fees were. Delaney v. Garden State Auto Park, 318 N.J.Super. 15, 20, 722 A.2d 967 (App.Div.1999).
Plaintiff correctly argues that the regulations she specified in her complaint require an automobile dealer to itemize documentary service fees. Two regulations are relevant. The first regulation is definitional:
"Documentary service fee" means any monies or other thing of value which an automotive dealer accepts from a consumer *946 in exchange for the performance of certain documentary services which include, but are not limited to, the preparation and processing of documents in connection with the transfer of license plates, registration, or title, and the preparation and processing of other documents relating to the sale of a motor vehicle to said consumer.
[N.J.A.C. 13:45A-26B.1.]
The second regulation concerns the charging of such documentary service fees. The regulation requires a dealer to itemize and specify such additional fees in the buyer's invoice. It provides, in part:
(a) Without limiting any other practices which may be unlawful under the Consumer Fraud Act, N.J.S.A. 56:8-1 et seq., the following practices involving the sale of motor vehicles by automotive dealers shall be unlawful thereunder.
. . . .
2. With respect to documentary service fees:
i. Accepting, charging, or obtaining from a consumer monies, or any other thing of value, in exchange for the performance of any documentary service without first itemizing the actual documentary service which is being performed and setting forth in writing on the sale document the price for each specific documentary service.
[N.J.A.C. 13:45A-26B.2(a)(2)(i).]
Plaintiff's CFA claim is based upon her contention that defendant overcharged her $20 for the processing of documents related to her purchase of the Jeep. Defendant argues that any difference in costs was not attributable to a documentary service fee and that, therefore, it was not required by N.J.A.C. 13:45A-26B.2(a)(2)(i) to have itemized the charge. We need not address the merits of that contention because defendant's argument ignores the procedural context in which this claim arises. Plaintiff is only required to state a claim upon which relief can be granted. She is not, at this early stage, required to prove that claim. Printing Mart, supra, 116 N.J. at 746, 563 A.2d 31.
In her complaint, plaintiff alleged in pertinent part that: at the time she purchased the vehicle from defendant, the Retail Buyer's Order contained a "Registration Fee" in the amount of $117; defendant did not specify that a documentary service fee was included in that amount; the $117 "Registration Fee" was $20 greater than the sum of all fees defendant was required to submit to the MVC; that the $20 difference constituted a documentary service fee, as defined by N.J.A.C. 13:45A-26B.1, that automobile dealers are required by N.J.A.C. 13:45A-26B.2(a)(2)(i) to itemize; defendant's failure to itemize the $20 documentary service fee is a violation of the CFA and of the TCCWNA.
We conclude that the trial judge erred when he determined that plaintiff had not alleged sufficient facts to survive a motion to dismiss. The allegations set out above sufficiently stated a claim of a regulatory violation, one of the three types of unconscionable business practices prohibited by the CFA. Thiedemann, supra, 183 N.J. at 245, 872 A.2d 783. Accordingly, we determine that the trial judge erred when he concluded otherwise.
We next turn to the trial judge's alternate reason for dismissing plaintiff's CFA count, her failure to demand a refund of the overcharge before filing suit. Both before the trial court and before us, defendant has relied heavily on the decision in Feinberg v. Red Bank Volvo, Inc., 331 N.J.Super. 506, 752 A.2d 720 (App.Div. 2000). In Feinberg, the court held that a plaintiff must seek a refund before filing suit in order to be entitled to relief under *947 the CFA. Id. at 511, 752 A.2d 720. The trial judge did not cite Feinberg in his decision, but his reasoning reflected its premise and we presume he relied on it. Defendant urges us to apply Feinberg and affirm the trial judge's conclusion that plaintiff's CFA count should be dismissed because she failed to demand a refund.
In Feinberg, the plaintiff went to a car dealership in response to its newspaper advertisement that stated in capital letters, "NOW AT RED BANK VOLVO JUST SIGN AND DRIVE." Id. at 509, 752 A.2d 720. The advertisement promised that no down payment or security deposit was required. The plaintiff selected a vehicle and after completing a credit application, he signed a lease and charged the motor vehicle and document fees totaling $210 to his credit card. Ibid.
In the credit application, plaintiff listed his annual salary and signed a certification that he had no outstanding judgments against him. The next day, the dealership notified the plaintiff that he had not qualified for its leasing program because a credit check disclosed the existence of several outstanding judgments that plaintiff had failed to disclose on the credit application. Ibid. Feinberg filed suit alleging Red Bank Volvo had violated the CFA when it failed to disclose in its advertisement that its "Sign and Drive" lease program was only available to customers who passed a credit check. Ibid.
The court held, id. at 511, 752 A.2d 720, that a plaintiff who fails to demand a refund prior to filing suit does not satisfy the CFA requirement of demonstrating an "ascertainable loss," as set forth in N.J.S.A. 56:8-19, which provides: "Any person who suffers any ascertainable loss of moneys . . . as a result of the use . . . by another person of any . . . practice declared unlawful under this act . . . shall [be entitled to an] award [of] threefold the damages sustained. . . ."
The Feinberg court held that the plaintiff's failure to demand a refund before filing suit necessitated the dismissal of his complaint because he had not "establish[ed] the loss with reasonable certainty." 331 N.J.Super. at 511, 752 A.2d 720. The panel reasoned:
There is absolutely no proof in this record that plaintiff demanded cancellation of [motor vehicle and document fees] or reimbursement by defendant prior to filing suit. We consider that a necessary element of proof in a matter such as this.
One aspect of the philosophy behind the [CFA's] trebling feature is to compensate fully a party who is unable to obtain redress without resort to the courts. One should not be able to obtain treble damages, however, if there has not been a prior demand to be made whole. That is particularly so in the instance of a regulatory violation, for which there is strict liability.

The consumer fraud statute is aimed at promoting truth and fair dealing in the market place. To award treble damages to a party who submitted an inaccurate credit application and who never asked, before filing suit, that the charge to his account be reversed, would not further those laudable purposes.

[Id. at 511-12, 752 A.2d 720 (emphasis added) (citations omitted)]
Feinberg had presented evidence of a $210 charge that he had put on his credit card. That evidence was certainly quantifiable or measurable. As a result, we disagree with the determination that the plaintiff there had not established his loss "with reasonable certainty." Id. at 511, 752 A.2d 720. We do not, however, disagree with the panel's ultimate conclusion in Feinberg that plaintiff was not entitled to the remedies *948 of the CFA because he deliberately submitted an inaccurate credit application, and his alleged damages were therefore attributable to his own fraud rather than any regulatory violation by the dealer. Id. at 512, 752 A.2d 720. We part company, however, with the panel's additional conclusion that the plaintiff's failure to demand a refund should cause him to forfeit the benefits of the CFA. Stated differently, we conclude that the refund-demand requirement imposed by Feinberg was not necessary to the panel's decision.
Feinberg cited no authority for the proposition that a plaintiff claiming damages under the CFA, is required to demand a refund. As noted, the CFA is remedial legislation; therefore, the court's holding in Feinberg, which narrows the scope of the Act and reduces the universe of persons entitled to relief, is disfavored. Cox, supra, 138 N.J. at 22, 647 A.2d 454 (rejecting, in light of the CFA's "clearly remedial purpose," the conclusion that a plaintiff has incurred no loss when he fails to take affirmative action to repair damage caused by a defendant).
The Legislature did not define the term "ascertainable loss" in N.J.S.A. 56:8-19. Under such circumstances, a court should not interpret that term in a manner that is at odds with its ordinary meaning or that would undermine the remedial purposes of the legislation. As the Court recently observed in D'Annunzio v. Prudential Ins. Co. of Am.:
Our goal in the interpretation of a statute is always to determine the Legislature's intent. To decipher that intent, we look first to the plain language of the statute and we ascribe to the statutory language its ordinary meaning. "It is not the function of this Court to `rewrite a plainly-written enactment of the Legislature [] or presume that the Legislature intended something other than that expressed by way of the plain language.'" (quoting DiProspero v. Penn, 183 N.J. 477, 492, 874 A.2d 1039 (2005)).
[192 N.J. 110, 119-20, 927 A.2d 113 (2007) (citations omitted).]
We conclude that to the extent Feinberg would require a plaintiff to demand a refund before being deemed to have satisfied the statute's ascertainable loss requirement, it is inconsistent with the plain statutory language and improperly narrows the class of individuals potentially entitled to benefit from the CFA. The Court first discouraged such an approach in its decision in Cox in 1994, and most recently in its decision earlier this year in D'Annunzio. Moreover, requiring a consumer to demand a refund before filing suit is contrary to the Court's decision in Thiedemann, supra, which holds that in order to satisfy the statute's ascertainable loss requirement, a plaintiff need only "produce evidence from which a factfinder could find or infer that the plaintiff suffered an actual [monetary] loss." 183 N.J. at 248, 872 A.2d 783. "In cases involving . . . misrepresentation, [an] out-of-pocket loss . . . will suffice to meet the ascertainable loss hurdle and will set the stage for establishing the measure of damages." Ibid. "[T]he certainty implicit in the concept of an `ascertainable' loss is that it is quantifiable or measurable." Ibid.
For these reasons we decline to follow Feinberg, see David v. Gov't Employees Ins. Co., 360 N.J.Super. 127, 142, 821 A.2d 564 (App.Div.2003), and reject the trial court's conclusion here that plaintiff's CFA claim should be dismissed because of her failure to demand a refund before filing suit.

III.
Plaintiff next argues that it was error for the trial court to dismiss her *949 claim under the Truth-in-Consumer Contract, Warranty and Notice Act (TCCWNA). Once again, giving plaintiff the benefit of all favorable inferences that can be drawn from her complaint, as we are required to do in the context of a Rule 4:6-2(e) motion, we conclude that plaintiff alleged sufficient facts that, if proven, would establish a violation of the TCCWNA. When the judge dismissed plaintiff's claim under that statute, he held that plaintiff made insufficient factual allegations to establish a cause of action under the TCCWNA because she had not alleged sufficient facts to constitute a potential violation of any clearly established legal right. We will not repeat our discussion in the preceding section, where we explained our conclusion that plaintiff had indeed alleged sufficient facts to demonstrate that defendant violated the Automotive Sales Practices regulations, promulgated under the CFA. Our discussion there is applicable to the TCCWNA count as well.
The TCCWNA, N.J.S.A. 56:12-14 to -18, prohibits a seller from entering into a contract with a consumer that includes any provision that violates a federal or state law. Specifically, the statute provides in pertinent part:
No seller . . . shall . . . enter into any written consumer contract . . . which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, . . . established by State or Federal law at the time the offer is made or the consumer contract is signed. . . .
[N.J.S.A. 56:12-15.]
The above provision of the TCCWNA establishes liability whenever a seller offers a consumer a contract, the provisions of which violate any legal right of a consumer. We have concluded above that plaintiff alleged sufficient facts to establish that the contract violated N.J.A.C. 13:45A-26B.2(a)(2)(i). Those allegations are therefore sufficient to establish a potential violation of the TCCWNA because a consumer contract that violates a clearly established legal right under the CFA regulations is also a violation of the TCCWNA. Accordingly, because plaintiff has presented sufficient facts in her amended complaint to state a claim under the TCCWNA, we reject the judge's conclusion that plaintiff did not plead a cause of action under that statute.
The judge provided an alternate reason for dismissing count two when he held that plaintiff failed to allege that the sales contract was unclear and "substantially confus[ing]" to her. N.J.S.A. 56:12-3. Plaintiff does not dispute the judge's conclusion that she failed to make such an allegation, but argues, rather, that a plaintiff is not required to make such allegations in order to state a claim under the TCCWNA. We agree. In holding that the TCCWNA requires a plaintiff to allege confusion about the contract's terms, the judge relied upon N.J.S.A. 56:12-3.[2] The TCCWNA, however, is actually codified only at N.J.S.A. 56:12-14 to -18.[3] The language that the judge quoted from N.J.S.A. 56:12-3 was a portion of a statute entitled "An Act concerning simple, clear, understandable and easily readable language in consumer contracts," which is codified at N.J.S.A. 56:12-2 to -13 and is generally referred to as the Plain Language Act. Kislak Co., Inc. v. Byham, 229 *950 N.J.Super. 163, 165, 550 A.2d 1291 (App. Div.1988). That Act is separate and distinct from the TCCWNA. Thus, it was error for the judge to require plaintiff to satisfy a requirement of the Plain Language Act, because that Act is not part of the TCCWNA.
We therefore conclude that the motion judge improperly dismissed count two of plaintiff's complaint, both because her allegations were sufficient to constitute a claim under the TCCWNA and because plaintiff was not required to allege that the language of the contract was confusing.

IV.
As to the third count of her complaint, plaintiff argues that the trial judge erred when he dismissed her unjust enrichment claim on the ground that no benefit was conferred upon defendant that was separate and distinct from the written contract. We agree with the judge's reasoning, and plaintiff's arguments to the contrary lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(1)(A), (E).
The portion of the September 25, 2006 order dismissing count three is affirmed, the portion dismissing counts one and two is reversed, and the matter is remanded to the trial court. Defendant shall file an answer to counts one and two of plaintiff's complaint, and discovery shall proceed with respect to those counts.
Affirmed in part, reversed in part, and remanded.
NOTES
[1] Plaintiff filed her amended complaint after the court granted defendant's motion for a more definite statement on July 14, 2006.
[2] The judge's opinion actually specifies N.J.S.A. 52:12-3, not 56:12-3, which we presume is a typographical error because N.J.S.A. 52:12-3 pertains to the Manual of the Legislature of New Jersey.
[3] We do not view the Court's opinion in Alloway v. Gen. Marine Indus., L.P., 149 N.J. 620, 641, 695 A.2d 264 (1997) as holding otherwise.