**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3294-23

SHAUN MORRELL, on behalf
of himself and all others
similarly situated,

     Plaintiff-Appellant,

v.

RETROFITNESS, LLC,
ABC FINANCIAL SERVICES
COMPANY, INC.,
ROCALOR FITNESS LLC,
d/b/a RETRO FITNESS OF
EAST WINDSOR, ROBERT
O. HAHL, LORI A. HAHL,
ERIC CABURI, and ANDREW
ALFANO,

     Defendants-Respondents.

_____

Submitted October 21, 2025 – Decided January 20, 2026

Before Judges Gooden Brown and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-7998-20.

Jones, Wolf & Kapasi, LLC, The Dann Law Firm, PC, and Poulos LoPiccolo PC, attorneys for appellant Shaun Morrell (Benjamin J. Wolf, Joseph K. Jones, Andrew R. Wolf and Joseph LoPiccolo, on the briefs).

Marks & Klein, LLC, attorneys for respondents Retrofitness, LLC; Mandelbaum Barrett PC, attorneys for respondents Rocalor Fitness, LLC, Robert O. Hahl, and Lori A. Hahl; and Cohen Seglias Pallas Greenhall & Furman, PC, attorneys for respondent ABC Fitness Solutions, LLC (Justin M. Klein, Joshua S. Bauchner, and Jonathan A. Cass, on the brief).

PER CURIAM

Plaintiff Shaun Morrell appeals from the June 17, 2024 Law Division orders dismissing his proposed consumer protection class action complaint with prejudice for failure to state a claim pursuant to Rule 4:6-2(e).  We are constrained to vacate the orders because the motion judge did not provide the requisite findings of fact and conclusions of law prescribed by Rule 1:7-4(a). We remand to the trial court for further proceedings consistent with this opinion.

I.

On November 17, 2020, plaintiff filed a proposed class action complaint in the Law Division on behalf of himself and others similarly situated alleging his contract with a fitness facility franchisee violated four consumer protection laws:  the Retail Installment Sales Act (RISA), N.J.S.A. 17:16C-1 to -61; the Truth-in-Consumer Contract, Warranty and Notice Act (TCCWNA), N.J.S.A.

56:12-14 to -18; the Health Club Services Act (HCSA), N.J.S.A. 56:8-39 to -48; and the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -210.

Defendants are a fitness facility franchisor, a finance company, a franchisee, and individuals associated with the franchisor and franchisee. Specifically, defendant Retrofitness, LLC (Retrofitness) "owns and operates Retro[f]itness outlets itself or via an affiliated entity and sells franchises for Retro[f]itness health clubs located throughout the State of New Jersey." Defendant ABC Fitness Solutions, LLC, incorrectly named as ABC Financial Services Company, Inc. (ABC), provides billing services to all New Jersey Retrofitness franchisees. Defendant Rocalor Fitness LLC d/b/a Retro Fitness of East Windsor (Retro Fitness of East Windsor) is a Retrofitness franchisee. Defendants Robert and Lori Hahl are the owners of Retro Fitness of East Windsor. Defendants Eric Casaburi, incorrectly pled as Eric Caburi, and Andrew Alfano are respectively the founder and CEO of Retrofitness. The complaint also included John Doe designations to encompass other associated individuals, corporations, and Retrofitness franchises, pursuant to Rule 4:26-4.

According to the complaint, plaintiff visited Retro Fitness of East Windsor and entered into a health club services contract (the Membership Agreement) in September 2014. Plaintiff received the Membership Agreement "via email

A-3294-23

sometime after he paid $74.87 down [p]ayment via credit card." Plaintiff alleged that "[d]uring the enrollment process," he "did not have any opportunity to nor did he see or review" the Membership Agreement. He "recall[ed] that everything was done verbally." Plaintiff was advised "he was going to have a one-year contract to be paid monthly, that the contract would automatically renew unless he cancelled[,] and that the rate would not go up." He "was not told nor was he aware that there would be an 'annual rate guarantee fee.'" He "first became aware of the 'annual rate guarantee fee' when he was charged that fee in December 2014 less than three months after he entered into" the Membership Agreement. Thus, plaintiff alleged he "was required to pay an annual rate guarantee fee to guarantee the rate that he had already agreed to pay for one-year during the one-year term of the agreement."

The complaint asserted Retro Fitness of East Windsor charged plaintiff an "enrollment fee" of $19.99, a "processing fee" of $29.99, and an "annual rate guarantee fee" of $39.99, resulting in a higher monthly rate of membership "than the advertised $19.99 monthly rate." The Membership Agreement described the membership type as a "basic membership agreement" (BM) and specified the enrollment fee, processing fee, and first month's dues in a column format, displaying the total paid on the day of signup. Below, under a section titled

"Recurring Payments," the Membership Agreement noted that eleven "dues" of $21.39 were owed monthly, starting a month after the date of signup. Further down, under a section titled "Fees," the Membership Agreement noted that the "annual" fee of $41.73 was due on December 1, 2014.

The Membership Agreement also contained an "Automatic Renewal Program (Monthly Dues Members)." The stated terms were, among others, if a member is not in default, and subject to the agreement's remaining terms, "the membership will automatically renew for the rate indicated below. Renewal terms may be cancelled at any time provided a [sixty]-day written notice is sent by certified mail to the club's address." The Automatic Renewal Program terms also stated the monthly renewal rate will not be increased above a specified amount of $19.99.

The Membership Agreement attached to the complaint is, for the most part, a printed adhesion contract. The agreement authorized Retro Fitness of East Windsor to either debit a member's credit card account or make an electronic funds transfer (EFT) from a member's bank account to pay monthly dues and other fees. If payment is made by EFT, the Membership Agreement reserved for ABC "the right to draft via EFT all amounts owed by the member including any and all late fees and service fees."

5

In the complaint, plaintiff generally alleged the terms of defendants' Membership Agreement violated the law by misrepresenting the monthly cost, obligating customers to renew, and charging unlawful fees. The complaint proposed a class defined as:

> All persons who were residents of New Jersey on the date this complaint is filed, and who at any time on or after the day six . . . years prior to the day the [c]omplaint was filed enrolled in a health club services contract for membership at and/or for use at any Retrofitness health club located in New Jersey, where the Membership Agreement used to enroll that person contained terms the same or similar to the Membership Agreements used in the transactions with the named [p]laintiff[,] including that it was a "BM" type Membership Agreement[,] and where the person was charged and paid an annual rate guarantee fee or other fee during the initial term of the contract and prior to any renewal and/or paid an annual rate guarantee fee or other fee in addition to the monthly fee in any year after the initial term of the contract.

The complaint included three counts. The first count alleged the Membership Agreement with plaintiff and those similarly situated contained terms that violated the TCCWNA, pursuant to N.J.S.A. 56:12-15, by violating clearly established rights under the RISA, HCSA, and CFA. Plaintiff alleged the Membership Agreement violated the HCSA, pursuant to N.J.S.A. 56:8-42(i) (2014), by obligating "automatic[] renew[al of] their health services contracts." Plaintiff further alleged the Membership Agreement violated the CFA, pursuant

6

to N.J.S.A. 56:8-2, by violating the HCSA and by implementing the following unconscionable commercial practices: charging and collecting fees beyond the fixed fee the consumer had already agreed to pay, misrepresenting the monthly fee for membership, and charging fees in violation of the TCCWNA. Finally, plaintiff alleged that the Membership Agreement violated the RISA, pursuant to N.J.S.A. 17:16C-50, by charging fees not authorized by the statute.

Plaintiff's second count alleged violations of the RISA, HCSA, and CFA independently, largely repeating the violations from the first count. Plaintiff first alleged that defendants violated the HCSA, pursuant to N.J.S.A. 56:8-42(i) (2024), and, therefore, the CFA, pursuant to N.J.S.A. 56:8-46, by obligating automatic renewal of their contracts "and by imposing unreasonable and unduly onerous requirements to cancel their health club memberships." Plaintiff then alleged that defendants violated the RISA, pursuant to N.J.S.A. 17:16C-50, and therefore the CFA pursuant to N.J.S.A. 56:8-2, by charging fees not "specifically permitted by [the] RISA." Finally, plaintiff alleged defendant misrepresented the monthly fee "by advertising that the cost would only be $19.99 per month or another fixed amount" when in fact there were additional fees "that effectively increased the monthly fee," thereby violating the CFA, pursuant to N.J.S.A. 56:8-2.

A-3294-23

The complaint's third count sought declaratory and injunctive relief pursuant to the Uniform Declaratory Judgment Act (UDJA), N.J.S.A. 2A:16-53, based on the alleged RISA, HCSA, CFA, and TCCWNA violations. Plaintiff requested a declaratory judgment that provisions of defendants' Membership Agreement violated the RISA, HCSA, CFA, and TCCWNA, and injunctive relief requiring defendants to "correct or remove" the provisions that violate the statutes. In addition to relief under the UDJA, plaintiff sought: class certification; an accounting of all class members and unlawful fees paid; notice pursuant to Rule 4:32-1(b)(2) to all putative class members; actual damages; maximum statutory damages; reasonable attorneys' fees and costs; and all other equitable relief.

When plaintiff filed the complaint, a similar action was pending in the Law Division, Ardino v. Retrofitness, LLC, MID-L-362-14. Ardino is a class action filed by several individuals who signed membership agreements with Retrofitness franchisees. The Ardino plaintiffs sued franchisor Retrofitness, their billing services company, ABC, and four Retrofitness franchisees, alleging violations of the same four statutes at issue here. Plaintiff filed a motion to consolidate Morrell with Ardino on January 20, 2021, but withdrew the motion shortly after.

8                                                                                          A-3294-23

Defendants moved to dismiss Morrell's complaint pursuant to Rule 4:6-2(e), arguing the claims were duplicative of the ones previously dismissed in Ardino.  On June 17, 2024, the judge entered three orders granting the motions as to all defendants, dismissing plaintiff's complaint with prejudice.  The judge, who had presided over both Morrell and Ardino, issued the following cryptic statement of reasons in all three orders:

> While, generally in a motion to dismiss a complaint, the court is guided by Printing Mart[-]Morristown v. Sharp Electronics, 116 N.J. 739 (1989), and a dismissal is ordinarily without prejudice, here the court grants the relief with prejudice, due to the procedural history of this case and the related matter of Ardino v. Retro-Fitness, MID-L-362-14.  As this court previously noted, plaintiffs are barred by the statute of limitations from bringing new claims.  The identity of the John Doe defendants was known to the plaintiffs at a time prior to the expiration of the statute of limitations.  Allen v. V & A Bros, Inc., 208 N.J. 114 (2011).

This appeal followed.

On appeal, plaintiff argues he was not a party in Ardino, nor did he bring the same claims as the plaintiffs in Ardino, and therefore Ardino cannot estop Morrell.  Further, he argues the statute of limitations had not expired and that the identity of the John Doe defendants could not have been known as discovery had not yet commenced.  Defendants counter the same claims at issue here were dismissed in Ardino and the case is "out of time."

9

II.

We review de novo a Rule 4:6-2(e) motion to dismiss for "failure to state a claim upon which relief can be granted" and we "owe[] no deference to the trial court's legal conclusions." Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 104, 108 (2019). "The standard traditionally utilized by courts to determine whether to dismiss a pleading . . . is a generous one." Green v. Morgan Props., 215 N.J. 431, 451 (2013). Accordingly, "[a] plaintiff is entitled to a liberal interpretation and given the benefit of all favorable inferences that reasonably may be drawn." State, Dep't of Treasury, Div. of Inv. ex rel. McCormac v. Qwest Commc'ns Int'l, Inc., 387 N.J. Super. 469, 478 (App. Div. 2006). As a result, motions to dismiss "should be granted in only the rarest of instances." Printing Mart, 116 N.J. at 772; see also Smith v. SBC Commc'ns Inc., 178 N.J. 265, 282 (2004) ("The motion to dismiss should be granted only in rare instances and ordinarily without prejudice. As such, '[i]f a generous reading of the allegations merely suggests a cause of action, the complaint will withstand the motion.'" (alteration in original) (quoting F.G. v. MacDonell, 150 N.J. 550, 556 (1997))).

In evaluating a Rule 4:6-2(e) motion, "our inquiry is limited to examining the legal sufficiency of the facts alleged on the face of the complaint." Green,

10

215 N.J. at 451 (quoting Printing Mart, 116 N.J. at 746). "At this preliminary stage of the litigation the [c]ourt is not concerned with the ability of plaintiffs to prove the allegation contained in the complaint." Printing Mart, 116 N.J. at 746. Rather, "the test for determining the adequacy of a pleading[ is] whether a cause of action is 'suggested' by the facts." Ibid. (quoting Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 192 (1988)).

To that end, courts must "search[] the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim" and grant the "opportunity . . . to amend if necessary." Ibid. (quoting Di Cristofaro v. Laurel Grove Mem'l Park, 43 N.J. Super. 244, 252 (App. Div. 1957)). Notwithstanding this liberality, "the essential facts supporting [the] cause of action must be presented in order for the claim to survive," and "conclusory allegations are insufficient in that regard." Scheidt v. DRS Techs., Inc., 424 N.J. Super. 188, 193 (App. Div. 2012) (citing Printing Mart, 116 N.J. at 768).

With the foregoing in mind, we review the substantive law governing plaintiff's claims to assess the judge's evaluation of the Rule 4:6-2(e) motion. As noted, plaintiff alleged the terms in the Membership Agreement violated four statutes: the RISA, CFA, HSCA, and TCCWNA.

11

The RISA establishes regulations for retail installment contracts and "provides broad protections for consumers." Sanchez v. Fitness Factory Edgewater, LLC, 242 N.J. 252, 268 (2020). Under the RISA,

> No retail seller . . . shall charge, contract for, collect or receive from any retail buyer, directly or indirectly, any further or other amount for costs, charges, insurance premiums, examination, appraisal service, brokerage, commission, expense, interest, discount fees, fines, penalties or other things of value in connection with retail installment contracts or retail charge accounts other than the charges permitted by this act, except court costs, attorney fees and the expenses of retaking and storing repossessed goods which are authorized by law.
>
> [N.J.S.A. 17:16C-50.]

The RISA applies to service contracts, including health club service contracts. Sanchez, 242 N.J. at 257. "In any contract to which [the] RISA applies, a fee that is not expressly authorized is a violation." Sanchez, 242 N.J. at 262 (citing N.J.S.A. 17:16C-50).

To state a claim under the CFA, a plaintiff must allege specific facts that, if proven, would establish three elements: "[(]1) unlawful conduct by defendant; [(]2) an ascertainable loss by plaintiff; and [(]3) a causal relationship between the unlawful conduct and the ascertainable loss." D'Agostino v. Maldonado,

216 N.J. 168, 184 (2013) (quoting Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 557 (2009)).

A defendant's unlawful conduct can take the form of "affirmative acts, knowing omissions, and regulation violations." Cox v. Sears Roebuck & Co., 138 N.J. 2, 17 (1994). If an affirmative act, "intent is not an essential element and the plaintiff need not prove that the defendant intended to commit an unlawful act." Id. at 17-18. If an omission, "the plaintiff must show that the defendant acted with knowledge, and intent is an essential element of the fraud." Id. at 18 (emphasis in original). If a violation of a CFA regulation, "intent is not an element of the unlawful practice, and the regulations impose strict liability for violations." Ibid.

The HCSA applies to health club services contracts and is found within the CFA. See N.J.S.A. 56:8-39 to -48. Notably, under the HCSA, "[a] health club services contract shall not obligate the buyer to renew the contract." N.J.S.A. 56:8-42(i). "[A]ny violation of the provisions of [the HCSA] shall be subject to the sanctions contained in the [CFA]." N.J.A.C. 13:45A-25.7.

The TCCWNA "prohibits a seller from entering into a contract with a consumer that includes any provision that violates a federal or state law."

13

<u>Bosland v. Warnock Dodge, Inc.</u>, 396 N.J. Super. 267, 278 (App. Div. 2007),

<u>aff'd</u>, 197 N.J. 543 (2009).  Specifically, the statute provides in pertinent part:

> No seller, lessor, creditor, lender or bailee shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign after the effective date of this act which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed.
>
> [N.J.S.A. 56:12-15.]

To state a claim under the TCCWNA, a plaintiff must allege:  (1) defendant is a seller, lessor, creditor, lender, bailee, or assignee; (2) "who, in writing, entered into a consumer contract or gave or displayed a consumer warranty, notice, or sign[;] (3) containing a provision that violates a consumer's 'clearly established legal right'"; and (4) plaintiff is a consumer who was "thereby 'aggrieved.'"  <u>Robey v. SPARC Group LLC</u>, 256 N.J. 541, 564 (2024) (quoting <u>Pisack v. B&C Towing, Inc.</u>, 240 N.J. 360, 379 (2020)); <u>see also</u> N.J.S.A. 56:12-15 (relevant statutory language).

The statute of limitations for a RISA claim, a TCCWNA claim, and a CFA claim is six years.  N.J.S.A. 2A:14-1(a) ("Every action at law . . . for recovery

upon a contractual claim or liability . . . shall be commenced within six years next after the cause of any such action shall have accrued."). Thus, a claim must be filed within six years of when a plaintiff knows "or by an exercise of reasonable diligence and intelligence should have discovered that he [or she] may have a basis for an actionable claim." Catena v. Raytheon Co., 447 N.J. Super. 43, 52-53 (App. Div. 2016) (quoting Lopez v. Swyer, 62 N.J. 267, 272 (1973)).

"[T]he date when a cause of action is deemed to have 'accrued' is 'the date upon which the right to institute and maintain a suit first arises.'" Belmont Condominium Ass'n, Inc. v. Geibel, 432 N.J. Super. 52, 82-83 (App. Div. 2013) (quoting Holmin v. TRW, Inc., 330 N.J. Super. 30, 35 (App. Div. 2000)). For a CFA claim, "the cause of action accrue[s] when [a] plaintiff suffer[s] an ascertainable loss." Id. at 83. Similarly, to maintain suit under the TCCWNA, a plaintiff must "show that he or she has suffered harm, even if that harm does not warrant an award of damages, as a result of a violation of [the TCCWNA]." Spade v. Select Comfort Corp., 232 N.J. 504, 524 (2018).

Here, the judge's written statement of reasons, comprising three sentences, did not satisfy Rule 1:7-4(a)'s requirements. Rule 1:7-4(a) provides in part:

> The court shall, by an opinion or memorandum decision, either written or oral, find the facts and state

15

its conclusions of law thereon in all actions tried without a jury, on every motion decided by a written order that is appealable as of right, and also as required by [Rule] 3:29.

Our ability to adjudicate appeals is directly related to the trial court's adherence to its obligation to clearly state findings of fact and conclusions of law as prescribed by Rule 1:7-4(a). The rule requires a trial court to "state clearly [its] factual findings and correlate them with the relevant legal conclusions, so that parties and the appellate courts [are] informed of the rationale underlying th[ose] conclusion[s]." Avelino-Catabran v. Catabran, 445 N.J. Super. 574, 594-95 (App. Div. 2016) (alterations in original) (quoting Monte v. Monte, 212 N.J. Super. 557, 565 (App. Div. 1986)). "Naked conclusions do not satisfy the purpose of [Rule] 1:7-4." Curtis v. Finneran, 83 N.J. 563, 570 (1980). Without a sufficient statement of reasons, "we are left to conjecture as to what the judge may have had in mind." Salch v. Salch, 240 N.J. Super. 441, 443 (App. Div. 1990).

When dismissing a complaint with prejudice, it is incumbent on the trial court to state specific reasons. Hoffman v. Hampshire Labs, Inc., 405 N.J. Super. 105, 116 (App. Div. 2009) (upholding the trial court's ruling "that [the] plaintiff's complaint failed to state claims upon which relief can be granted," but criticizing the court for "provid[ing] no reasons for departing from th[e] general

16

rule" that ordinarily dismissal "is granted without prejudice"); see also Klajman v. Fair Lawn Ests., 292 N.J. Super. 54, 61 (App. Div. 1996) ("The point is that a motion for dismissal with prejudice requires the trial court to make an informed decision based upon a full record, and express its reasons for that decision before the case is dismissed."). Failure to clearly state the conclusions of fact and law that support a dismissal with prejudice "constitutes a disservice to the litigants, the attorneys[,] and the appellate court." Curtis, 83 N.J. at 569-70 (quoting Kenwood Assocs. v. Bd. of Adj. Englewood, 141 N.J. Super. 1, 4 (App. Div. 1976)).

Here, the judge's conclusory statement as to the applicability of the statute of limitations failed to address the issue "in any meaningful way and fell short of [her] obligation under [Rule] 1:7-4." Salch, 240 N.J. Super. at 443. It did not provide any analysis of plaintiff's claims or provide the relevant date when plaintiff's claims began to accrue. Although the judge referred to the "procedural history" in Ardino, this court does not have the familiarity with Ardino that the judge has.[1] Nor did the judge explain how collateral estoppel

---

[1]  In Ardino, after the judge certified a general class and two subclasses on plaintiffs' motion for class certification, we granted defendants' motion for leave to appeal and issued an unpublished opinion concluding plaintiffs "established the elements necessary for class certification for some, but not all claims."

principles would apply to bar plaintiff from bringing his claims. As a result, "[m]eaningful appellate review is inhibited." <u>Salch</u>, 240 N.J. Super. at 443. Accordingly, we vacate the three June 17, 2024 orders and remand to the trial court for an oral or written statement of reasons consistent with the requirements of <u>Rule</u> 1:7-4(a). We leave to the judge's discretion the ultimate outcome of the adjudication of the motions.

Vacated and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

---

<u>Ardino v. Retrofitness, LLC</u>, No. A-2836-16 (App. Div. May 21, 2019) (slip op. at 2-3). Accordingly, we affirmed "the part of the order granting plaintiff's motion for the class designated as Subclass #2, namely, members charged fees after attempting to cancel their memberships," vacated "the parts of the order granting plaintiffs' motion for class certification as to the general class and the class designated as Subclass #1," and remanded "for further proceedings." <u>Ibid.</u> "Subclass #1 include[d] '[a]ll members of the Class who paid an annual rate guarantee fee or similar charge,'" and the general class included "[a]ll persons" who enrolled at any New Jersey Retrofitness health club within six years of the filing of the complaint using a membership agreement containing terms that were "the same or similar" to the named plaintiffs'. <u>Id.</u>, slip op. at 8.

A-3294-23